UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **ROBERT BROUSSARD** | **CASE NO. 6:22-CV-00577** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **STABIL DRILL SPECIALTIES LLC** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

The present matter before the Court is Defendant Stabil Drill Specialties, L.L.C.'s Motion for Summary Judgment [ECF No. 18]. Plaintiff opposes the motion. For the reasons stated below, the Court GRANTS the Motion for Summary Judgment.

### I.
### BACKGROUND

Robert Broussard ("Broussard") was employed by Stabil Drill Specialties L.L.C. ("Stabil Drill") at its Lafayette, Louisiana, location from 1994 until March 26, 2020.[1] Stabil Drill provides comprehensive bottom hole assembly support, ranging from custom component engineering and fabrication to rental drilling tools and repairs. It is a subsidiary of Superior Energy Services, Inc., a publicly traded Houston-based oilfield services company.[2] Broussard was originally hired by Stabil Drill as a dispatcher—also called an "operations coordinator."[3] He subsequently assumed

---

[1] ECF No. 18, Exhibit A, Deposition of Robert Broussard ("Broussard Dep."), 31:1-18, 42:24-43:4; ECF No. 13, Amended Complaint, ¶¶ 8, 10.
[2] ECF No. 18, Exhibit B, Declaration of Kellie Hataway ("Hataway Decl."), ¶¶ 2-3.
[3] Broussard Dep., 31:5-14.

1

the position of "operations manager." In that position, he conducted coaching conversations with his direct reports,[4] and had other managerial duties.[5]

The summary judgment record reflects that Broussard was counseled and coached by his supervisors on a number of performance-related issues over the course of his employment, including concerns over his managerial skills. Specifically, in November of 2018, Mike Robin, Broussard's supervisor, counseled Broussard on a number of performance deficiencies, including:

- Improving his ability to manage employees and helping his reports to solve problems;

- managing overtime;

- concerns about managing an employee who was ignoring calls and making mistakes;

- failing to discipline an employee for a safety incident; and

- the need to be proactive with employee communication and to engage with employees more.[6]

The three "major take-aways" of the counseling session were that one employee was not being held at the same performance standard, causing a loss of credibility with management; insufficient positive encouragement and feedback from Broussard; and Broussard not being viewed as a strong leader by his direct reports.[7]

---

[4] A coaching conversation refers to a technique and a document used by Stabil Drill management to address the performance of their direct reports throughout the year. See Ex. 13 to Broussard Dep., which describes the purpose of the document.
[5] Broussard Dep., 51:4-55:19, 84:21-85:5.
[6] Broussard Dep., 76:24- 77:20, 79:5-84:19 and Ex. 13 thereto; ECF No. 18, Exhibit D, Deposition of Mark Russo ("Russo Dep."), 54:25-56:15 and Ex. 10 thereto.
[7] *Id.*

In May of 2019, Robin counseled and coached Broussard again on concerns over his management skills.[8] A Feedback Discussion Guide[9] reflects several performance issues, including Broussard's failure to provide directions to subordinates about their responsibilities, failure to complete coaching conversations with employees, and the need to "step up" and take more ownership directly with personnel.[10] Then, in June of 2019, summary judgment record reflects that Broussard was disciplined for an email he sent to Mark Russo, a Stabil manager who was tasked with temporarily closing the Lafayette office in preparation for Hurricane Barry.[11] Russo sent an email to Broussard and another employee asking if someone had alerted the answering service to the closure and who to contact during the storm.[12] Stabil contends that Broussard replied in a rude and unprofessional manner, copying group email addresses that included, among others, his subordinates.[13] This incident resulted in disciplinary action, specifically a verbal warning contained in another Feedback Discussion Guide and meeting with Broussard and management.[14]

Not long after the email incident, on July 15, 2019, a truck driver made a complaint to Human Resources about Broussard. The driver reported that Broussard did not treat people fairly and was not a good supervisor.[15] Eventually, in late July of 2019, Broussard was demoted from operations manager to facility coordinator/customer specialist position.[16] The demotion was characterized as a disciplinary action based on Stabil's assessment that Broussard had failed to

---

[8] Broussard Dep., 86:1-88:9 and Ex. 14 thereto.
[9] A Feedback Discussion Guide is similar to a written coaching conversation document in that it was used to discuss feedback with employees about performance. See Ex. 14 to Broussard Dep., which describes the purpose of the document.
[10] *Id.*
[11] Broussard Dep., 97:23-101:5 and Ex. 15; Russo Dep., 42:1- 43:22 and Exhibit 5 thereto.
[12] *Id.*
[13] *Id.*
[14] *Id.*, specifically Ex. 15.
[15] Broussard Dep., 102:13-105:6 and Ex. 16.
[16] Amended Complaint, ¶ 8; Broussard Dep., 60:9-62:24 and Ex. 6 thereto; Exhibit C, Equal Employment Opportunity Records ("EEOC") Records, EEOC00040-42, EEOC00049-516; Exhibit D, 30(b)(6) Deposition of Stabil Drill, Corporate Representative Mark Russo ("Russo Dep."), 11:14-13:13, 46:5-17 and Ex. 2 thereto.

3

demonstrate leadership and managerial skills.[17] As a facility coordinator/customer specialist, Broussard began reporting to Mark Russo, who had been an Asset Manager heading the corporate asset team since 2017 and who was slated to also take over the Lafayette Rentals Department temporarily in addition to his Asset Manager role.[18] Russo met with Broussard to discuss expectations and duties in Broussard's new role, recapping the conversation and in an Employee Conversation Document.[19] However, in early 2020, an email sent by Broussard prompted Russo to counsel Broussard on his responsibility to direct, locate, and line-up drivers.[20] In the email at issue, Stabil Drill believed that Broussard ignored this responsibility.[21] Then, in March of 2020, Russo met with Broussard again to reiterate his duties and responsibilities in response to Russo's belief that Broussard was declining to perform certain duties on the grounds that they were outside the scope of his work and pay.[22]

The summary judgment record also reflects that the oil and gas industry experienced significant, adverse financial pressure from the decline in oil prices beginning in 2015. These adverse conditions persisted for several years and were compounded by the impact of 2019 coronavirus pandemic on the global economy.[23] Stabil Drill suffered from the same adverse economic conditions as the rest of the industry and, in 2020, implemented a "reduction in force" by terminating some of its operations coordinators in Lafayette.[24] Stabil Drill used a points system and specific evaluation criteria to evaluate which operations coordinators to include in the reduction in force.[25] These criteria included job skills, attendance record, safety record, other

---

[17] Russo Dep., 65:9-22.
[18] Broussard Dep., 63:17-64:2 and Exs. 6 and 7 thereto; Russo Dep., 5:24-6:3, 45:8-23, 58:14- 59:8 and Ex. 12 thereto.
[19] Broussard Dep., 68:6-69:24 and Exs. 8 and 9 thereto.
[20] Broussard Dep., 107:11-108:20 and Ex. 17.
[21] *Id.*
[22] Russo Dep., 56:12-58:13 and Ex. 11 thereto.
[23] Hataway Decl., ¶ 4.
[24] Broussard Dep., 122:8-127:13 and Exs. 19-21 thereto.
[25] Russo Dep., 48:12-51:6, 64:10-65:16 and Ex. 7 thereto; ECF No. 18, Ex. C, EEOC Records, EEOC000053.

disciplinary actions, job performance, and length of service.[26] Three of the six operations coordinators who were evaluated were selected for reduction. Broussard scored in the bottom three based upon his discipline and job performance and, accordingly, was one of those selected.[27] On March 26, 2020, Russo and Kellie Hataway, Human Resources Manager, met with Broussard to inform him that his employment was being terminated. They provided him a letter in the meeting, which explained that the termination was part of a "reduction in force" as "[t]he current downturn in the world's economy due to the global pandemic has been severe and Superior Energy is taking immediate steps to manage cost."[28]

Stabil Drill did not replace Broussard when his employment ended; instead Russo assumed some of Broussard's responsibilities.[29] According to Stabil Drill, Broussard never complained about age discrimination at any time during his employment.[30] The summary judgment record does not reflect that any one at Stabil Drill ever told Broussard that his employment was terminated due to age.[31] The summary judgment record also reflects that there were a total of six operations coordinators at Stabil Drill. Two operations coordinators who are substantially younger than Broussard were also selected for termination as a result of the reduction in force.[32] One of the terminated employees was the youngest of the operations coordinators at age 32, and the other terminated employee was 43 years old. Additionally, one of the older (55 years old) operations coordinators was retained.[33]

---

[26] *Id.*
[27] *Id.*
[28] Broussard Dep., 123:4-127:5 and Exhibit 20 thereto.
[29] Hataway Decl., ¶ 7.
[30] Broussard Dep., 38:5-11.
[31] Broussard Dep., 121:16-122:7.
[32] ECF No. 18, Ex. C, EEOC Records, EEOC00150-151.
[33] *Id.*

On January 20, 2021, counsel for Broussard faxed a copy of Charge of Discrimination ("Charge") to the EEOC. Broussard mailed the Charge to the EEOC on January 21, 2021.[34] The EEOC received the Charge on January 29, 2021, 309 days after Broussard's employment at Stabil Drill ended.[35]

## II.
## LAW AND ANALYSIS

### A. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[36] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[37] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[38] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[39]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence

---

[34] *Id.* EEOC00080-83, EEOC00098-101 (Charge Detail Inquiry); EEOC00102-109 (Activity Log), EEOC00314-316.
[35] *Id.*
[36] Fed. R. Civ. P. 56(a).
[37] *Id.*
[38] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[39] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

6

supporting the moving party that is uncontradicted and unimpeached."[40] "Credibility determinations are not part of the summary judgment analysis."[41] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[42]

### B. Timeliness.

Prior to bringing suit under the Age Discrimination in Employment Act ("ADEA"), "a person seeking relief under the ADEA must first file an administrative charge with the EEOC."[43] In a "deferral" state like Louisiana, an aggrieved person has 300 days from the date of the last act of discrimination to file a charge with the EEOC.[44] Stabil Drill argues that Broussard's Charge was untimely. The documentation provided by the EEOC reflects that the Charge was filed on January 29, 2021—309 days after Broussard's termination. Broussard, however, argues that he timely submitted the Charge *300 days* after he was terminated by sending a copy of the Charge by facsimile to a number provided on the EEOC website.[45] Broussard filed a copy of the facsimile transmission and EEOC filing instructions into the record.[46]

The EEOC filing instructions submitted by Broussard undercut his argument that his January 20th facsimile filing was the effective date of his EEOC charge. That exhibit explicitly

---

[40] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[41] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[42] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).
[43] *Julian v. City of Houston*, 314 F.3d 721,725 (5th Cir.2002).
[44] 42 U.S.C. § 2000e–5(e)(1); *see Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir.2001); *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir.1998); *Messer v. Meno*, 130 F.3d 130, 134 & n. 2 (5th Cir.1997).
[45] ECF No. 30, Exhibit A.
[46] ECF No. 30-3 (Exhibit B to Broussard's Memorandum in Opposition to Motion for Summary Judgment); ECF No. 30-15 (Exhibit L to Broussard's Memorandum in Opposition to Motion for Summary Judgment).

outlines how an EEOC charge may be commenced—"in person at an EEOC office."[47] The instructions further explain that a "Charge of Discrimination can be completed through our online system *after you submit an online inquiry and we interview you*."[48] There is no evidence in the summary judgment record that Broussard was first interviewed by the EEOC and then that he filed his complaint through the EEOC's online system. The instructions further state that "submitting an online inquiry is not the same as filing a charge of discrimination with EEOC."[49] The instructions also explicitly state that the EEOC does not accept Charges of Discrimination over the phone.[50] However, nothing in the EEOC's filing instructions addresses filing by facsimile transmission. Courts have held that evidence showing that a complaint was transmitted to the EEOC by facsimile before the lapse of the 300-day deadline creates a genuine question of material fact as to timeliness even if the EEOC's records reflect a later commencement date.[51] Accordingly, the Court will address Stabil Drill's Motion on the merits of Broussard's ADEA claim.

### C. ADEA Claim.

Plaintiff asserts a claim for discriminatory treatment under the ADEA. Under the ADEA, the prima facie requirements for a disparate treatment claim are: (1) the plaintiff was subjected to adverse action; (2) the plaintiff was qualified for the position; (3) the plaintiff was within the protected class at the time; and (4) the plaintiff was terminated because of his age.[52] To establish an ADEA claim, "a plaintiff must prove by a preponderance of the evidence (which may be direct

---

[47] ECF No. 30-15
[48] *Id.* (emphasis added).
[49] *Id.*
[50] *Id.*
[51] *See, e.g., Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473 (7th Cir. 2009) (facsimile confirmation generated by the employee's counsel's fax machine was sufficient to create a factual dispute that discrimination charge was received by the EEOC on the date shown on the confirmation); *Climer v. W.C. Bradley Co.*, 198 F. Supp. 2d 1370, 1374 (M.D. Ga. 2002) (Court was "reluctant to find that facsimile transmission is an inadequate mode of transmission" of EEOC complaint).
[52] *Goudeau v. National Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015)

8

or circumstantial), that age was the 'but-for' cause of the challenged employer decision."[53] Unlike Title VII claims, the ADEA does not allow the plaintiff to prove discrimination by showing that age was simply a motiving factor. Accordingly, the "but-for" standard is more demanding than the "motivating factor" standard of proof.[54]

A plaintiff can prove a claim of unlawful discrimination by either direct or circumstantial evidence. Cases built on the latter, such as this one, are analyzed under the framework set forth in *McDonnell Douglas Corp v. Green*.[55] The *McDonnel Douglas* framework requires Plaintiff to first establish a prima facie case of discrimination by showing: (1) he was a member of a protected class; (2) he was qualified for his position; (3) he was discharged or subject to an adverse employment action by his employer; and (4) he was replaced by someone outside his protected class or was treated less favorably than other similarly situated employees outside of the protected group.[56]

If the plaintiff makes this prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.[57] The employer's burden is only one of production, not persuasion, and involves no credibility assessment.[58] If the employer meets this burden, the presumption of discrimination disappears, and the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that the employer's proffered reason is not true, but instead is a pretext for discriminatory animus.[59]

---

[53] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir.2010) (quotation marks and citation omitted).
[54] *Leal v. McHugh*, 731 F.3d 405 (5th Cir. 2013).
[55] 411 U.S. 792 (1973). *See e.g. McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).
[56] *Id.*; *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 512 (5th Cir.2001).
[57] *Williams v. Waste Management, Inc.*, 818 Fed.Appx. 315 (5th Cir. 2020).
[58] *Id.*
[59] *Id.*

9

### 1. Broussard's Prima Facie Case.

As to Broussard's prima facie case, Stabil Drill concedes that Broussard was a member of a protected class and that he was discharged. Stabil, however, argues that Broussard was not qualified for the position and that he was not (1) replaced by someone outside his protected class or (2) treated less favorably than other similarly situated employees outside of the protected group. Stabil Drill argues that, based upon the scoring criteria used to determine which operations coordinators to terminate, Broussard scored near the bottom of his department and was terminated. The Court disagrees with this analysis and finds that the evidence in the record establishes that but for the adverse economic conditions which Stabil Drill has alleged resulted in the need to reduce the number of operations coordinators, Broussard would have remained employed with Stabil Drill and there is no evidence to suggest he was otherwise unqualified for his position.

The final factor required to establish a prima facie case is that Broussard was either replaced by someone outside his protected class or was treated less favorably than other similarly situated employees outside of the protected group. Broussard argues that he was replaced by Mark Russo who is substantially younger than him and also that he was treated less favorably than William Sealy and Justin Stewart, who were younger than him and were retained by Stabil Drill. There is no evidence in the record that Broussard was replaced by anyone. Though Mr. Russo may have assumed some of the job duties of those individuals who were terminated, there is no evidence that the positions were actually filled by anyone.

Broussard next argues that he was treated less favorably than Sealy and Stewart, who were outside the protected class, and were not terminated. Stabil Drill argues that Sealy and Stewart are not similarly situated with Broussard. Specifically, Stabil Drill points to the fact that neither Sealy nor Stewart had any disciplinary records during their employment while Broussard did. Broussard

10

argues that the disciplinary records proffered by Stabil Drill were manufactured after the fact. To qualify as "similarly situated" for the purpose of an employment-discrimination claim, the employees being compared must have the same job or responsibilities, share the same supervisor or have their employment status determined by the same person, and have comparable violation histories.[60] In *Allen v. U.S. Postal Service*, the Fifth Circuit recently opined as to the issue of "comparable violation histories" and concluded that there was a genuine issue of fact on this issue where the plaintiff disputed the very misconduct and subpar performance with which she was charged.

In the instant case, Broussard acknowledged that he sent a "rude" email to his supervisor and was reprimanded and later apologized. However, in his deposition, Broussard was unaware of any of the remaining allegations of misconduct or subpar conduct and disputed those allegations. Nevertheless, it is undisputed that Broussard was subjected to multiple coaching and counseling sessions for performance-based deficiencies during his employment. There is no evidence in the summary judgment record indicating that these counseling sessions, or the discipline imposed on Broussard were the result of age-related bias. On the other hand, the summary judgment record does not show similar pattern of counseling and coaching for Stewart and Sealy. Accordingly, Broussard has not shown that Stewart and Sealy are adequate comparators and thus fails to satisfy this final element of his prima facie case.

### 2. Legitimate, Non-discriminatory Basis For Broussard's Termination.

Stabil Drill next argues that, even if Broussard has established a prima facie case of discrimination, Stabil has met its burden of articulating a legitimate, nondiscriminatory reason for Broussard's termination—namely a reduction in workforce due to economic reasons. Specifically,

---

[60] 63 F.4th 292, 301 (5th Cir. 2023); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

the summary judgment record shows that Stabil Drill ranked employees by various performance criteria, including managerial skills.[61] Broussard was ranked at the bottom of his department primarily because of the management skills deficiencies cited in his prior counseling and coaching sessions.[62] Broussard, along with other employees who ranked at the bottom of their departments were terminated as a result of the reduction in force.[63] The Court agrees that the summary judgment record establishes a legitimate, nondiscriminatory basis for Broussard's termination. Accordingly, the burden now shifts back to Broussard to establish that Stabil Drill's proffered reason for terminating Broussard is merely a pretext for a discriminatory purpose.

### 3. Pretext.

Broussard argues that the proffered reason for his termination—the reduction in force and his low performance ranking—is merely pretext for a general animus at Stabil Drill against older workers. In this regard, Broussard points to declarations from Nola Boudreaux and Janessa Fusilier. Both Boudreaux and Fusilier were similarly terminated by Stabil Drill. Boudreaux, who was 63 years old when she was terminated, testified that Stabil Drill's employees were essentially divided into cliques by age: there was an "older group" and a "younger group" at Stabil Drill, and that she and Broussard were part of older group. She testified that she and Broussard were not included in certain meetings and were not invited to social gatherings.[64] Fuselier, who was 54 years old when she was terminated, states that the "younger group" of employees at Stabil Drill excluded her from gatherings and other events.[65] The "younger group" included both Hataway and Russo.[66] In Boudreaux's termination meeting on June 29, 2022, Hataway stated to Boudreaux "you can be

---

[61] ECF No. 18, Exhibit C.
[62] *Id.*
[63] *Id.*
[64] ECF No. 30, Exhibit F.
[65] ECF No. 30, Exhibit G.
[66] ECF No. 30, Ex. F, p. 3, ¶ 21; Ex. G, p. 1, ¶ 6.

12

...

home now and spend more time with your grandchildren."[67] Broussard also contends that the offices of younger employees were physically relocated next to each other, and that Broussard was moved out of his office.

Boudreaux's and Fusilier's declarations do not satisfy Broussard's burden of showing that the proffered grounds for his termination were mere pretext for age-based discrimination. Their testimony includes no evidence of discriminatory, age-based comments or actions by Stabil Drill's management in connection with the reduction in force. Nor does the presence of age-based cliques support a finding of pretext. There is no evidence in the summary judgment record that the alleged cliques were motivated by age-based animus or that these cliques played any role in the evaluation process that Stabil used to implement the reduction in force that resulted in Broussard's termination. Moreover, Broussard's allegations with respect to office relocations, standing alone, do not support a discriminatory inference with respect to the reduction in force. As far as Stabil Drill moving Broussard out of his office, this move apparently occurred when Broussard was demoted for performance reasons.[68] The summary judgment record indicates that Broussard was eventually moved back to his old office.[69] Broussard offers no evidence that these actions were based on age-related bias other than affidavit testimony of age-related cliques at Stabil's facility. As previously explained, the presence of age-related cliques, standing alone, does not demonstrate age-related bias with respect to Stabil's ultimate decision to terminate Broussard.

Broussard also points to Boudreaux's testimony about being told that, upon her termination, she would be free to spend more time with her grandchildren. This comment is ambiguous at best as evidence of age-based discrimination and may only reflect that Hataway

---

[67] ECF No. 30, Ex. F, pp. 2-3.
[68] ECF No. 18, Russo Dep. 65:9-22.
[69] ECF No. 18, Broussard Dep., 74:15-76:20, 113:7-114:1

13

knew that Boudreaux had grandchildren. This stray comment does not, on its face, reflect age-based animus, or that age was a factor in Stabil Drill's decision to terminate Boudreaux or Broussard. Boudreaux's declaration provides no other context that would convert this stray remark into evidence of age-related animus by Stabil Drill in conducting its reduction in force. Nor does Broussard's reliance on the Fifth Circuit's recent decision in *Allen v. USPS* support his claim of pretext.[70] In *Allen*, the Fifth Circuit concluded that a comment made by a supervisor to the effect that he did not like hiring older workers could be sufficient circumstantial evidence of discriminatory animus.[71] Here, unlike the comment in *Allen*, the comment reflected in the declarations was not made to Broussard and did not, on its face, reflect a discriminatory animus. The comment was made after Stabil Drill had decided to terminate Ms. Boudreaux and appear to relate strictly to Hataway's personal knowledge of Boudreaux. In contrast, the comment at issue in *Allen* reflected explicit, age-based bias in a hiring decision.

Broussard's pretext claim is also undercut by evidence of Stabil Drill's use of an objective ranking system in implementing the reduction in force and the effect of that ranking system.[72] The ages of the operations coordinators who were terminated were 32, 43 and 61 years old; the ages of the operations coordinators who were *retained* were 36, 37 and 55 years old.[73] Accordingly, the ranking system not only fails to take age into account, the terminations that resulted from Stabil's use of this the ranking system do not reflect any age-based pattern. Instead, it appears from the summary judgment record that Stabil's ranking system was based solely on objective performance-based criteria. Broussard has pointed to nothing in the summary judgment record showing that this selection system was merely a pretext for unlawful age discrimination.

---

[70] *Allen v. U.S. Postal Service*, 63 F.4th 292, 301 (5th Cir. 2023).
[71] *Id.*
[72] ECF No. 18, Ex. S. to Hataway Decl., Evaluation Criteria for Employees with More Than 90 Days of Service.
[73] ECF No. 18, Ex. 21 to Broussard Dep.

\* \* \*

In sum, Broussard cannot establish the essential elements of his age discrimination claim under the ADEA. Defendant Stabil Drill Specialties, L.L.C.'s Motion for Summary Judgment [ECF No. 18] is therefore GRANTED; Broussard's claims are DISMISSED WITH PREJUDICE.

THUS DONE in Chambers on this 16th day of May, 2023.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE